UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ELIZABETH CHOUINARD,
DENNIS CHOUINARD,
     Plaintiffs,

        v.

MARIGOT BEACH CLUB AND          CIVIL ACTION NO. 20-10863-MPK[1]
DIVE RESORT,
MARIGOT ESCAPES, LIMITED,
MARIGOT INN, LIMITED, and
DAVID SHIMELD,
     Defendants.

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
AND IMPROPER VENUE (#7).

I. Introduction.

Elizabeth Chouinard was a guest at Marigot Beach Club and Dive Resort in Marigot Bay,

St. Lucia when, on February 16, 2018, she fell in the area of the hot tub and was seriously injured.

*See* #1, complaint. She has sued Marigot Beach Club and Dive Resort, Marigot Escapes, Limited,

Marigot Inn, Limited, and David Shimeld for negligence and failure to warn; her husband alleges

loss of consortium. (#1 ¶¶10-13, 21-28.) Defendants have moved to dismiss the complaint for lack

of personal jurisdiction and improper venue. (#7.) Plaintiffs oppose the motion and argue that they

are entitled to jurisdictional discovery prior to dismissal. (#18 at 17-18.)[2] For the reasons set out

below, plaintiffs are permitted to conduct jurisdictional discovery and defendants' motion to

dismiss is denied without prejudice, subject to its renewal after jurisdictional discovery.

---

[1] The parties have consented to proceeding before the undersigned, pursuant to 28 U.S.C. § 636(c).
(#16.)

[2] Citations are to ECF page numbers.

II. <u>Standard of Review</u>.

Plaintiffs bear the burden of establishing that the court may properly exercise personal jurisdiction over defendants. *See Nandjou v. Marriott Int'l, Inc.*, 985 F.3d 135, 148 (1st Cir. 2021); *Chen v. U.S. Sports Acad., Inc.*, 956 F.3d 45, 54 (1st Cir. 2020); *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016); *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145 (1st Cir. 1995). On a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the court may choose from several methods of determining whether plaintiffs have satisfied their burden. *See Foster-Miller*, 46 F.3d at 145-146 (*discussing Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671 (1st Cir. 1992)). The most common is the prima facie method. *A Corp.*, 812 F.3d at 58 n. 5 (citation omitted). Under that method, the court does not engage in differential factfinding; it merely considers whether plaintiffs have "'proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction.'" *Foster-Miller*, 46 F.3d at 145 (*quoting Boit*, 967 F.2d at 675).[3]

To make a prima facie showing, plaintiffs cannot rely on unsupported allegations in their pleadings; they must adduce "evidence of specific facts." *Chen*, 956 F.3d at 54 (*quoting Foster-Miller*, 46 F.3d at 145)). *See A Corp.*, 812 F.3d at 58; *Boit*, 967 F.2d at 675. The court must accept plaintiffs' properly documented evidentiary proffers as true and construe them in the light most favorable to personal jurisdiction. *A Corp.*, 812 F.3d at 58 (citations omitted). *See Chen*, 956 F.3d at 54; *Foster-Miller*, 46 F.3d at 145. The court looks beyond the pleadings to examine plaintiffs'

---

[3] Another method the court may employ is the preponderance method, which, unlike the prima facie method, typically requires an evidentiary hearing and differential factfinding. *A Corp.*, 812 F.3d at 58 n. 5 (citation omitted). *See Foster-Miller*, 46 F.3d at 145-146 (*discussing Boit*, 967 F.2d at 676). The First Circuit has indicated that the court may employ the preponderance method "for example, when the proffered evidence is conflicting and the record is rife with contradictions, or when [plaintiffs'] affidavits are 'patently incredible....'" *Foster-Miller*, 46 F.3d at 146 (*quoting Boit*, 967 F.2d at 676)).

evidentiary proffers. It also considers defendants' properly documented evidentiary proffers, if undisputed. *Chen*, 956 F.3d at 56 (citation omitted).

III. <u>Facts</u>.

Elizabeth and Dennis Chouinard primarily reside in Westport, Massachusetts. (#1 ¶¶1-2.) In their complaint, they allege that Marigot Beach Club and Dive Resort (the Resort) is a foreign corporation with its principal place of business in Marigot Bay, St. Lucia. (#1 ¶3.) However, in his affidavit in support of dismissal, David Shimeld attests that the Resort is not, and has never been, a foreign corporation. Rather, "Marigot Beach Club" is a trade name used for marketing purposes. (#8-2 ¶¶4-5.)

Plaintiffs allege that Marigot Escapes, Limited is a foreign corporation with its principal place of business in Georgetown, Cayman Islands. (#1 ¶4.) Conversely, Shimeld attests that while Marigot Escapes, Limited was a foreign corporation with a principal place of business in the Cayman Islands, it was dissolved in or around 2005; it was not operating on or about February 16, 2018; and, it never had a business or ownership interest in Marigot Inn. (#8-2 ¶¶6-8.)

Plaintiffs allege that Marigot Inn, Limited (Marigot Inn) is a foreign corporation with its principal place of business in Castries, Marigot, St. Lucia. (#1 ¶5.) Shimeld attests that Marigot Inn is a foreign corporation with a principal place of business in Marigot Bay, St. Lucia. (#8-2 ¶3.) According to Shimeld, Marigot Inn was founded over 25 years ago; it operates a resort; and, it had 20 employees when he executed his affidavit. (#8-2 ¶9.) It uses a single principal office, located in Marigot Bay, St. Lucia. (#8-2 ¶10.)

Plaintiffs allege that Shimeld is the managing director of the Resort. (#1 ¶6.) Shimeld attests that, on February 16, 2018, he was the owner and managing director of Marigot Inn.

3

Shimeld further attests that he is a resident of Castries, St. Lucia and has never resided in, or been to, Massachusetts. (#8-2 ¶¶1, 2, 13.)

Shimeld also attests as follows: Defendants have never had offices or centers of activity in any location other than St. Lucia and the Cayman Islands. Defendants do not own or lease any real or personal property outside of St. Lucia or the Cayman Islands. (#8-2 ¶¶11, 19.)

Defendants have never had an office in Massachusetts; have never been registered to do business in Massachusetts; and have never had an agent for service of process in Massachusetts. (#8-2 ¶¶12, 14, 15.) Defendants have never held corporate meetings in Massachusetts. Defendants have never employed individuals who lived in Massachusetts. No officer or director of defendants lived in Massachusetts while holding that position. (#8-2 ¶¶16, 17, 21.) Defendants have never had a mailing address or telephone number in Massachusetts. (#8-2 ¶18.)

Defendants have never committed a tort in Massachusetts. Defendants have never brought suit in a Massachusetts court. (#8-2 ¶¶20, 22.) No court has determined that defendants are amenable to service of process in Massachusetts. (#8-2 ¶23.)

Defendants do not have contractual relationships, privity, or any business dealings with Massachusetts. Their bank accounts are maintained separately from any other entity and outside of Massachusetts. Their physical assets are owned by defendants, not any other entity. Defendants do not use, own, or lease physical assets in Massachusetts. (#8-2 ¶¶24-26.)

Defendants have never contracted to supply services or goods related to this civil action in Massachusetts. (#8-2 ¶28.) Defendants do not derive any substantial revenue from services rendered or goods used or consumed in Massachusetts. (#8-2 ¶30.)

Defendants have never directed any specific advertisements in the Massachusetts marketplace or established channels of regular communication to consumers in Massachusetts.

Defendants do not solicit business or engage in any other course of conduct within Massachusetts. (#8-2 ¶¶27-29.)

Elizabeth attests that, in late December 2017, she decided to take a trip to the Caribbean with her sister-in-law, Jodie Anthony. Since Jodie is an avid diver, they were interested in resorts that offered scuba diving. (#18-2 ¶¶2-3.) Elizabeth and Jodie conducted research on the internet and "came upon" the Resort, "which targeted divers." (#18-2 ¶4.)[4]

"Based upon the targeted marketing and the information provided in the website," Elizabeth and Jodie decided to make a 7-day reservation at the Resort, from February 15-22, 2018. (#18-2 ¶5.) Elizabeth attests:

> The reservation was made on January 4, 2018 and although payment was made through Expedia because it was cheaper, the Marigot website did permit direct reservations as well as on-line chatting.
>
> Following payment, Marigot forwarded the reservation which noted that payment was "Collected by Expedia."

(#18-2 ¶¶6-7.)[5]

Elizabeth further attests that on multiple occasions after the reservation was made, she and Jodie "communicated directly with Marigot regarding the trip via telephone, email and fax on January 20, 22, 23, 24, 25, 2018 and February 19, 2018. Those communications pertained to the purchase of additional services from Marigot." (#18-2 ¶8.)

---

[4] Elizabeth identifies Exhibit A as a copy of the Resort's website. (#18-2 ¶4). Exhibit A appears to be copies of some, but not all, pages of the Resort's website from 2020. *Compare* #18-1 at 1-7 *with id.* at 2 ("Site Map" including apparent links for additional pages not submitted to the court, such as "Dive," "Tours & Excursions," "Spa," "Hot Deals," and "E-Brochure"). *See also* #18-1 at 2 ("© 2020 Marigot Beach Club. All Right Reserved"). It also includes a "Cookie Notice" from April 2018. *See* #18-1 at 6 ("Effective Date: April 2018").

[5] Exhibit B appears to be a copy of the reservation. (#18-1 at 8-10.)

Exhibit C is a series of emails between Elizabeth and "info@marigotbeachclub.com" on January 20, 22-25 and an email from "info@marigotbeachclub.com" to Jodie on February 19, plus two invoices. (#18-1 at 11-23.) The emails between Elizabeth and the Resort largely concern booking excursions and spa treatments, including facials on the morning of February 16. (#18-1 at 12-13, 15-17, 19, 20.) In one, Elizabeth indicated that she tried to call the Resort to provide her credit card information, but that she was repeatedly disconnected. (#18-1 at 15.) In another, the Resort indicated that a credit card authorization form was attached. (#18-1 at 16-17.)[6]

Elizabeth attests that she and Jodie arrived at the Resort on February 15, 2018. (#18-2 ¶10.) The following evening, Elizabeth "was injured on an unmarked and dark entrance to the sauna and jacuzzi," suffering multiple fractures to her pelvis, right elbow and arm, and a concussion. (#18-2 ¶¶10-11.)[7] Elizabeth returned to Boston on February 19, 2018, where she received most of her treatment. (#18-2 ¶¶12-14.)

## IV. Law.

Personal jurisdiction refers to a court's power to require the parties to obey its orders. *Hannon v. Beard*, 524 F.3d 275, 279 (1st Cir. 2008). Where, as here, subject matter jurisdiction is based upon diversity of citizenship, the federal court acts as the functional equivalent of the state court sitting in the forum state in determining whether it has the power. *See Nandjou*, 985 F.3d at 148; *Chen*, 956 F.3d at 54. More specifically, the court must determine whether its exercise of personal jurisdiction over defendants comports with the forum state's long-arm statute and with

---

[6] Elizabeth asserts that, to purchase additional services, the Resort required that she complete the form, which she did on January 23, 2018. She sent the form to the Resort on January 24. (#18-2 ¶9.) Exhibit D is the credit card authorization form. It lists a Massachusetts address for credit card billing. (#18-1 at 24-25.)

[7] Exhibit E appears to be photographs of the area where Elizabeth fell. (#18-1 at 26-29.)

the Fourteenth Amendment's Due Process Clause. *See Nandjou*, 985 F.3d at 148; *Chen*, 956 F.3d at 54.

The Massachusetts Supreme Judicial Court (SJC) has held that the state's long-arm statute, Mass. Gen. Laws ch. 223A, § 3, imposes requirements that are not coextensive with the Due Process Clause. *SCVNGR, Inc. v. Punchh, Inc.*, 478 Mass. 324, 325 (2017). Most recently, the First Circuit has declined to parse the differences between the statutory requirements and the constitutional ones. *Chen*, 956 F.3d at 54. *See also Nandjou*, 985 F.3d at 148. Yet it is settled that the court's exercise of personal jurisdiction must comport with both the statutory and constitutional requirements. *See A Corp.*, 812 F.3d at 58. *See also Nandjou*, 985 F.3d at 148; *Chen*, 956 F.3d at 54. Its exercise of personal jurisdiction is not proper if plaintiffs satisfy their burden under the Massachusetts long-arm statute, but not the Due Process Clause. *See Ericson v. Conagra Foods, Inc.*, No. 20-CV-11022-ADB, 2020 WL 6912105, at *4 n. 3 (D. Mass. Nov. 24, 2020) ("given the Supremacy Clause, the Massachusetts long-arm statute cannot permit jurisdiction where it would not be constitutionally permissible"). *See*, *e.g.*, *Christopher v. Mount Snow, Ltd.*, No. 95-CV-10352-MLW, 1996 WL 590738, at *1, *2-3, *5-7 (D. Mass. Sept. 24, 1996) (dismissing complaint where plaintiff satisfied burden under Massachusetts long-arm statute, but not Due Process Clause).

A. <u>Massachusetts Long-Arm Statute</u>.

As relevant here, Mass. Gen. Laws ch. 223A, § 3(a), provides that the court "may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's…transacting any business in this commonwealth…."[8] Section

---

[8] Plaintiffs cite two other sections of the state long-arm statute -- § 3(b) ("contracting to supply services or things in this commonwealth") and § 3(d) ("causing tortious injury in this commonwealth by an act or omission outside this commonwealth…."). (#18 at 15, 16.) Neither

3(a) is construed "broadly" in favor of personal jurisdiction. *Tatro v. Manor Care, Inc.*, 416 Mass. 763, 767 (1994) (citation omitted). In *Tatro*, defendant was the Quality Inn Hotel and Conference Center in Anaheim, California, which regularly solicited business for conferences across the country. Plaintiff was a member of the American Council of Hypnotist Examiners, which held a conference at the hotel in 1987. After the 1987 conference, the hotel contacted the council's president to inquire as to whether the council would hold the 1988 conference there. The hotel wrote to the president with a proposed contract, which the president accepted. The council then sent two mailings to its members informing them of the 1988 conference, its date and location, and that they would receive a special rate at the hotel. Members who registered for the conference in response to the first mailing were sent a preprinted registration card that had been provided by the hotel to the council. The second mailing indicated that an accommodations form would be included with confirmation of registration, but that late registrants to the conference should make reservations directly with the hotel by telephone. Plaintiff was a late registrant and reserved a room at the hotel by telephone, providing an employee with her contact information and credit card

---

requires extended discussion. The former does not apply because "in this commonwealth" refers to the place where the services were to be rendered, not the place where the contract was formed. Here, the services were to be rendered in St. Lucia, not Massachusetts. *Hussain v. Rhode Island Hosp.*, No. 19-CV-10513-PBS, 2019 WL 3546888, at *4 (D. Mass. June 12, 2019) (§ 3(b) did not apply where medical treatment was administered in Rhode Island) (*citing Droukas v. Divers Training Acad., Inc.*, 375 Mass. 149, 157 (1978)) (report and recommendation adopted, No. 19-CV-10513-PBS, ECF No. 33 (June 27, 2019)). Similarly, the latter does not apply because, here, the accident and thus "tortious injury" occurred in St. Lucia, not Massachusetts. *Crocker v. Hilton Int'l Barbados, Ltd.*, 976 F.2d 797, 799-800 (1st Cir. 1992) (§3(d) did not apply; although plaintiffs' trauma and consortium-related injuries experienced upon return to Massachusetts, plaintiffs were suing for damages stemming from out-of-state sexual assault) (*citing, inter alia, Mello v. K-Mart Corp.*, 604 F. Supp. 769, 771 (D. Mass. 1985) (plaintiff "purchased the hydraulic jack in Tennessee, and he was injured in Tennessee. The fact that he returned to Massachusetts for treatment and recovery cannot alter where the injury occurred")). *See also Lewis v. Walt Disney Parks & Resorts U.S., Inc.*, No. 18-CV-11947-DJC, 2019 WL 1505964, at *3 (D. Mass. April 5, 2019) (§ 3(d) did not apply because scooter accident and injury occurred in Florida).

number. She stayed at the hotel for the conference and was injured when she fell in the bathtub in her room. *Id*. at 765-766.

Interpreting Mass. Gen. Laws ch. 223A, § 3(a), broadly, the SJC held that "arising from" requires but for causation, rather than proximate causation. *Tatro*, 416 Mass. at 770-771 (rejecting First Circuit's restrictive interpretation of phrase in *Marino v. Hyatt Corp.*, 793 F.2d 427 (1st Cir. 1986), and progeny). In the case before it, that standard was satisfied: "But for the defendant's solicitation of business in Massachusetts, and its agreement to provide the plaintiff with hotel accommodations in Anaheim, California, the plaintiff would not have been injured in a room of the hotel." *Id*. at 771-772.

### B. Due Process Clause.

The Fourteenth Amendment requires that defendants have "such 'contacts' with the forum state that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Ford Motor Co. v. Montana Eighth Judicial District Court*, --- U.S. ---, 141 S.Ct. 1017, 1024 (2021) (*quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316-317 (1945)). The constitutional analysis turns on the nature and extent of the relationship between defendants and the forum state. *Id*. Depending on the nature and extent of that relationship, the court may exercise either general or specific jurisdiction. *Id*.

### 1. General jurisdiction.

General jurisdiction allows the court to exercise personal jurisdiction over defendants on all claims brought by plaintiffs. *Ford*, 141 S.Ct. at 1024 (citation omitted). Such sweeping jurisdiction is proper only if defendants are "essentially at home" in the forum state. *Id*. (citation and punctuation omitted). In the "paradigm" case, a person is subject to general jurisdiction in his

or her domicile. For a company, the place of incorporation and principal place of business are "equivalent" to a person's domicile. *Id.* (citation and punctuation omitted). *But see Daimler AG v. Bauman*, 571 U.S. 117, 139 n. 19 (2014) (leaving open possibility that, "in an exceptional case," a company might be essentially at home elsewhere).[9]

### 2. Specific jurisdiction.

Specific jurisdiction allows the court to exercise personal jurisdiction over defendants who are less intimately tied to the forum state, but only on certain claims. *Ford*, 141 S.Ct. at 1024. In *Ford*, the Supreme Court explained:

> The contacts needed for this kind of jurisdiction often go by the name purposeful availment. The defendant…must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State. The contacts must be the defendant's own choice and not random, isolated, or fortuitous. They must show that the defendant deliberately reached out beyond its home -- by, for example, exploiting a market in the forum State or entering a contractual relationship centered there. Yet even then -- because the defendant is not "at home" -- the forum State may exercise jurisdiction in only certain cases. The plaintiff's claims…must arise out of or relate to the defendant's contacts with the forum. Or put just a bit differently, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.

*Id.* at 1024-1025 (citations and punctuation omitted). These limiting principles derive, in part, from an interest in treating defendants fairly. *Id.* at 1025 (citation omitted).

The First Circuit applies a three-pronged test in determining whether the court's exercise of specific jurisdiction over defendants comports with constitutional due process:

> (1) whether the claim directly arises out of, or relates to, the defendant's forum state activities; (2) whether the defendant's in-state contacts represent a purposeful availment of the privilege of conducting activities in the forum state, thereby

---

[9] Plaintiffs invoke specific jurisdiction and do not adequately develop an argument as to general jurisdiction. (#18 at 10-14.) It is clear that the court may not properly exercise general jurisdiction. Marigot Inn is a foreign corporation with a principal place of business in St. Lucia. (##1 ¶5; 8-2 ¶3.) The Resort is in St. Lucia. (##1 ¶¶3, 7, 10; 8-2 ¶¶3-10.) Shimeld lives in St. Lucia. (#8-2 ¶2.) Defendants are at home in St. Lucia and plaintiffs do not articulate exceptional circumstances.

invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable; and (3) whether the exercise of jurisdiction is reasonable.

*A Corp.*, 812 F.3d at 59 (citation and punctuation omitted). Plaintiffs must meet all three prongs. *Id*. *See Nandjou*, 985 F.3d at 148; *Chen*, 956 F.3d at 54.

a. Relatedness.

On the first prong of the due process inquiry, plaintiffs generally must demonstrate a nexus between their claims for relief and defendants' forum-based activities. *A Corp.*, 812 F.3d at 59. *See Nandjou*, 985 F.3d at 148; *Chen*, 956 F.3d at 54. The First Circuit has expressly considered the requisite nexus in tort cases brought against foreign hotels following accidents on their premises.[10]

In *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708 (1st Cir. 1996), plaintiff's wife accompanied him on a business trip to Hong Kong in September 1993. She drowned in the pool of a Holiday Inn, leading to a Massachusetts wrongful death suit against the owner of the hotel (Tak How). Plaintiff's employer (Kiddie Products) did extensive business in Hong Kong. Plaintiff traveled to Hong Kong twice per year, once with his wife. Kiddie Products' relationship with the hotel began in 1992, when an executive stayed there and met with the sales manager to negotiate a corporate discount for Kiddie Products' employees. The hotel agreed to the discount and wrote a letter confirming the arrangement, which was based on a minimum number of room nights annually. The executive's assistant made all hotel reservations for Kiddie Products' employees and was instructed to book them at the Holiday Inn until instructed differently. Since 1992, Kiddie Products' employees stayed exclusively at that hotel. *Nowak*, 94 F.3d at 711.

---

[10] In their briefing, neither party meaningfully addressed this body of case law, which is most relevant to the court's analysis.

In June 1993, the Holiday Inn sent the executive a message announcing new corporate rates and other promotional materials. The assistant asked for more information, and the hotel responded promptly. In July 1993, after a series of communications, the assistant sent a reservation request to the hotel for some of Kiddie Products' employees and their spouses, including plaintiff and his wife. Before the wife's death, Tak How had advertised the hotel in national and international publications, some of which circulated in Massachusetts. In February 1993, Tak How sent direct mail solicitations to roughly 15,000 of its previous guests, some of whom lived in Massachusetts. *Nowak*, 94 F.3d at 711. The district court found that it could properly exercise specific personal jurisdiction over Tak How, observing, in part, that the hotel included the pool as an attraction in its promotional materials. *Nowak v. Tak How Inv. Ltd.*, 899 F. Supp. 25, 31 (D. Mass. 1995)). The First Circuit affirmed.

Under the Due Process Clause, the *Nowak* court held that a proximate cause requirement "better comports with the relatedness inquiry because it so easily correlates to foreseeability, a significant component of the jurisdictional inquiry." *Nowak*, 94 F.3d at 715.[11] "A 'but for' requirement, on the other hand, has in itself no limiting principle; it literally embraces every event that hindsight can logically identify in the causative chain." *Id.* However, the *Nowak* court was "persuaded that strict adherence to a proximate cause standard in all circumstances is unnecessarily restrictive." *Id*. The relatedness prong "is, relatively speaking, a flexible, relaxed standard." *Id*. (citation and punctuation omitted). The *Nowak* court continued:

> We see no reason why, in the context of a relationship between a contractual or business association and a subsequent tort, the absence of proximate cause per se should always render the exercise of specific jurisdiction unconstitutional.

---

[11] The *Nowak* court recognized that the *Tatro* court's interpretation of Mass. Gen. Laws ch. 223A, § 3, controlled and "dealt [the First Circuit's] restrictive interpretation [of the phrase 'arising from'] a fatal blow." *Nowak*, 94 F.3d at 713.

> When a foreign corporation directly targets residents in an ongoing effort to further a business relationship, and achieves its purpose, it may not necessarily be unreasonable to subject that corporation to forum jurisdiction when the efforts lead to a tortious result.

*Id*. *See id*. at 716 ("By this approach, we intend to emphasize the importance of proximate causation, but to allow a slight loosening of that standard when circumstances dictate;" "we note an additional protection for defendants' rights: the relatedness requirement authorizes the court to take into account the strength (or weakness) of the plaintiff's relatedness showing in passing upon the fundamental fairness of allowing the suit to proceed") (citation and punctuation omitted).

Applying a loosened approach, the *Nowak* court held that plaintiffs had met their burden on the relatedness prong. It reasoned: "While the nexus between Tak How's solicitation of Kiddie Products' business and Mrs. Nowak's death does not constitute a proximate cause relationship, it does represent a meaningful link between Tak How's contact and the harm suffered." *Nowak*, 94 F.3d at 716.

Generally, since *Nowak*, the First Circuit has recognized that while proximate causation is not a per se requirement, its presence or absence is important, directing that the constitutional relatedness inquiry focus on the materiality of the causal link between plaintiffs' claims for relief and defendants' forum-based activities. *See Harlow v. Children's Hosp*., 432 F.3d 50, 60-61 (1st Cir. 2005). *See also Platten v. HG Bermuda Exempted Ltd*., 437 F.3d 118, 137 (1st Cir. 2006); *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 289 (1st Cir. 1999).

Judges in this district have declined to apply *Nowak*'s modified proximate cause standard in cases involving accidents at foreign hospitality service providers in which there was no evidence

of an ongoing business relationship between defendants and plaintiffs or evidence that defendants directly targeted, at least, forum-state residents, if not plaintiffs themselves.[12]

This year, the First Circuit reaffirmed *Nowak*, agreeing with the district court that exercise of specific jurisdiction over defendants was proper under the circumstances presented by that tort case involving an accident on the premises of a foreign hotel. *Nandjou*, *supra*, 985 F.3d 135 (affirming in part and reversing in part *Nandjou v. Marriott Int'l, Inc.*, No. 18-CV-12230-ADB, 2019 WL 2918043 (D. Mass. July 8, 2019)).[13] In *Nandjou*, plaintiff's family was on vacation in Montreal when her husband and child drowned in the pool of their Residence Inn, leading to a Massachusetts wrongful death suit against the hotel's owners (Marriott) and franchisee (Reluxicorp). Plaintiff's family received numerous direct mailings from the Marriott defendants at their Massachusetts home advertising various Marriott properties. On at least three occasions, Marriott sent materials to the home that promoted the Montreal Residence Inn. The direct mailings

---

[12] *See*, *e.g.*, *Weinberg v. Grand Circle Travel, LLC*, 891 F. Supp. 2d 228, 245 (D. Mass. 2012) (declining to apply *Nowak*'s modified proximate cause standard, noting absence of evidence that defendant-operators of foreign hot air balloon ride targeted Massachusetts residents through use of travel agents); *Christopher*, 1996 WL 590738, at *5-7 (same, noting absence of evidence of ongoing business relationship or that defendant-ski resort targeted plaintiff through Massachusetts advertisements). *Accord Dagesse v. Plant Hotel N.V.*, 113 F. Supp. 2d 211, 218 (D. N.H. 2000) (similar). *But see*, *e.g.*, *Sigros v. Walt Disney World Co.*, 129 F. Supp. 2d 56, 67 (D. Mass. 2001) (applying *Nowak*'s modified proximate cause standard; "Disney's solicitation in Massachusetts which led [mother] to make reservations at [resort] was not the proximate cause of [daughter's] injury at [restaurant], but it was reasonably foreseeable that advertising in Massachusetts for [resort] would induce Massachusetts residents to make reservations at a Disney-owned hotel…. Furthermore, Disney assured [mother] that handicapped-accessible facilities were available for [daughter] in their hotel room. By extension, it was surely foreseeable that a handicapped guest would use and might be injured by use of the wheelchair ramp at [restaurant]").

[13] *Nandjou* was decided on January 15, 2021, five days before defendants filed their reply to plaintiffs' opposition here. The First Circuit affirmed the court's judgment denying defendants' motion to dismiss for lack of personal jurisdiction but reversed its judgment granting defendants motion to dismiss on forum non conveniens grounds. *Nandjou*, 985 F.3d at 152-153.

included photos of the hotel and described its pool. After reviewing them, plaintiff's husband booked a stay. *Id.* at 139.

The First Circuit rejected the attempt to distinguish *Nowak* and concluded that the Marriott defendants' forum-based activities were "sufficiently related" to plaintiff's claims to support the exercise of specific jurisdiction. *Nandjou*, 985 F.3d at 150. It reasoned:

> …[T]he Marriott defendants' activity that provides the basis for the District Court's conclusion that the relatedness requirement has been met does not consist of their merely having posted an advertisement for the Canadian hotel on the internet for all the world to see. Instead, that activity…consists of the Marriott defendants deliberately having cultivated business from Nandjou and her family in Massachusetts by sending direct mail to her home in the Commonwealth that promoted the very hotel in which the drownings occurred and that even described that hotel's pool.

> Nor is this a case in which such a direct in-forum-state attempt to cultivate the plaintiff's business played no role in the plaintiff's decision to enter into the business relationship that grounds her tort claims. The record suffices to provide support for Nandjou's claims that, through those materials, the Marriott defendants induced her family to stay at that hotel.

*Id.* (citation omitted).

More recently, the Supreme Court, in *Ford*, *supra*, 141 S.Ct. 1017, provided additional guidance on specific jurisdiction in tort cases.[14] There, a resident of Montana was killed while driving an Explorer in Montana. Her estate sued Ford Motor Co. for defective design, failure to warn, and negligence in Montana state court. A resident of Minnesota was injured while riding in a Crown Victoria in Minnesota. He sued Ford Motor Co. for products-liability, negligence, and breach-of-warranty in Minnesota state court. Ford Motor Co. argued that the state courts could not properly exercise personal jurisdiction unless the company's activities in those states gave rise to plaintiffs' claims for relief and such causal link only existed if it designed, manufactured, or

---

[14] *Ford* was decided on March 25, 2021, after briefing was complete in this case.

initially sold the particular vehicles there. The state courts disagreed with defendant. *Id*. at 1022-1024.

The Supreme Court disagreed with defendant, too. The majority rejected the notion that a "strict causal relationship" is necessary. *Ford*, 141 S.Ct. at 1026. It emphasized that the classic formulation of the constitutional relatedness inquiry -- "arise out of *or relate to*" -- is disjunctive. *Id*. (citations omitted) (emphasis in original). While the phrase "arise out of" asks about causation, "relate to" suggests that some non-causal relationships will suffice. *Id*. Yet "[t]hat does not mean anything goes. In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants…." *Id*. In the case before it, the "connection" between plaintiffs' claims for relief and defendant's forum-based activities was "close enough." *Id*. at 1032. The majority reasoned, in part:

> …Ford had advertised, sold, and serviced those two car models in both States for many years.… In other words, Ford had systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States. So there is a strong relationship among the defendant, the forum, and the litigation -- the essential foundation of specific jurisdiction.

*Id*. at 1028 (citation and punctuation omitted).   !

### b. Purposeful availment.

The cornerstones of the second prong of the due process inquiry are "foreseeability" and "voluntariness." *PREP Tours, Inc. v. Am. Youth Soccer Org*., 913 F.3d 11, 19-20 (1st Cir. 2019) (citation omitted). *See A Corp*., 812 F.3d at 60. "Foreseeability" means that, from the nature and extent of their contacts with the forum state, defendants "'should reasonably anticipate being haled into court there.'" *Id*. at 20 (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). "Voluntariness" means that defendants' contacts with the forum state are the result of their own

choices and actions, not the unilateral choices and actions of others. *Id*. (citation omitted). *See Ford*, 141 S.Ct. at 1024-1025.

Plaintiffs must establish a "substantial" connection between defendants and the forum state. *PREP Tours*, 913 F.3d at 19 (*quoting Burger King*, 471 U.S. at 475). That defendants communicated with plaintiffs in the forum state remotely does not foreclose such a connection. However, that communications were remote may be relevant to purposeful availment. *Id*. at 20 (citation omitted).

c. <u>Reasonableness</u>.

On the third prong of the due process inquiry, the court considers the so-called "gestalt" factors. They are:

> (1) the defendant's burden of appearing in the forum state, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial systems' interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*A Corp.*, 812 F.3d at 61 (citation and punctuation omitted). *See Sawtelle v. Farrell*, 70 F.3d 1381, 1394 (1st Cir. 1995); *Ticketmaster-N.Y., Inc. v. Alioto*, 26 F.3d 201, 209-210 (1st Cir. 1994).

V. <u>Analysis</u>.

Plaintiffs' argument that the court may properly exercise specific jurisdiction over defendants relies heavily on the claim that the Resort has an "interactive" website, which allegedly collects visitors' information through Cookies, and the claim that the Resort is featured on third-party travel service websites, including expedia.com, tripadvisor.com, hotels.com, and booking.com. Plaintiffs argue that, by virtue of the website and third-party accounts, defendants have purposefully availed themselves of the privilege of doing business, and have done business,

17

in Massachusetts. (#18 at 7-8, 10, 11, 14.) Defendants counter that the operation of a "passive" website is not enough. (#19 at 2-3.)[15]

The Supreme Court has not yet provided clear guidance on defendants' "virtual" contacts with a forum state. *See Ford*, 141 S.Ct. at 1028 n. 4 ("we do not here consider internet transactions, which may raise doctrinal questions of their own") (*citing Walden v. Fiore*, 571 U.S. 277, 290 n. 9 (2014) ("this case does not present the very different questions whether and how a defendant's virtual 'presence' and conduct translate into 'contacts' with a particular State")). Absent such clear guidance, the First Circuit has been reluctant to announce broadly-applicable rules, but has identified a "baseline principle:" defendants "do[] not necessarily purposefully avail [themselves] of the benefits and protections of every state in which [their] website is accessible." *Plixer Int'l, Inc. v. Scutinizer GmbH*, 905 F.3d 1, 7-8 (1st Cir. 2018) (trademark infringement case addressing

---

[15] As noted, the few pages from the Resort's website, Exhibit A, seem to post-date the accident. Nevertheless, they are generally consistent with Elizabeth's sworn assertion that, at the relevant time, the Resort's website "did permit direct reservations as well as on-line chatting." (#18-2 ¶6.) *See* ##18-1 at 2 ("Book Now"); 18-1 at 3 ("Check Availability"). *See also* #18-1 at 2 ("Welcome back! How can I help you today?").

The only defense affidavit (Shimeld's, *see* #8-2) does not address the Resort's website or the collection of visitors' information through Cookies. The court does not accept defense counsel's unsworn, unsupported assertion in reply that defendants "do not use the Cookie data to track visitors or conduct target advertising." (#19 at 2-3.) *See Jupiter v. Ashcroft*, 396 F.3d 487, 491 (1st Cir. 2005) ("Counsel's factual assertions in pleadings or legal memoranda are not evidence…") (citations omitted). The court also does not accept counsel's assertions that the website "do[es] not sell any products…that end up in Massachusetts or anywhere else" and that it "does nothing more than present information about the [R]esort in a passive way." (#19 at 2, 3.) Those assertions are inconsistent with Elizabeth's sworn, reasonably supported assertion that the website permitted direct reservations.

The record includes references to "Expedia" and "tripadvisor." *See* ##18-2 ¶6 ("…payment was made through Expedia…"); 18-1 at 10 ("Collected by Expedia"). *See also* #18-1 at 2 ("tripadvisor" review). It is silent as to "hotels.com" and "booking.com." The court does not accept plaintiffs' counsel's unsworn, unsupported assertion that the Resort is featured on those third-party travel service websites. (#18 at 11, 14.) Nor does the court accept plaintiffs' counsel's unsworn, unsupported assertion that expedia.com, tripadvisor.com, hotels.com, and booking.com "sell regularly to Massachusetts." (#18 at 14.)

specific jurisdiction) (*citing*, *inter alia*, *A Corp*., 812 F.3d at 61 (trademark infringement case addressing specific jurisdiction)). *Accord Cossaboon v. Maine Med. Ctr*., 600 F.3d 25, 35 (1st Cir. 2010) (similar, in medical malpractice case addressing general jurisdiction). Were it otherwise, crucial limitations on the exercise of personal jurisdiction would be eroded. *A Corp*., 812 F.3d at 61. This is because websites are, in a word, ubiquitous.

In *A Corp*., the First Circuit rejected plaintiff's claim that the Arizona company's website supported the exercise of specific jurisdiction. The website did not refer to Massachusetts and did not provide a mechanism by which its residents could buy the company's plumbing goods or services. *A Corp*., 912 F.3d at 60-61. *Cf. Cossaboon*, 600 F.3d at 35 (hospital's website was interactive and accessible to New Hampshire residents, but "not purposefully directed toward them").

"[A]lthough a close call," in *Plixer*, the First Circuit affirmed the district court's ruling that the German company's website supported the exercise of specific jurisdiction. In that case, there was evidence that the website generated a "regular flow" or "regular course of sales" to residents of the United States. *Plixer*, 905 F.3d at 10 (applying *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 888-890 (2011) (Breyer, J., concurring)).

In this case, on the one hand, there is some indication in the record that the website and third-party accounts were accessible to Massachusetts residents (*i.e*., Elizabeth and Jodie) and provided mechanisms by which they could search for and book available rooms. (##18-1 at 2-4; 18-2 ¶¶6.)

On the other hand, presently, there is no indication in the record that the website and third-party accounts were purposefully directed toward Massachusetts residents. Exhibit A does not refer to Massachusetts residents. (#18-1 at 2-7.) Elizabeth attests that she and Jodie "came upon"

the website, which "targeted divers." She attests that payment was made through Expedia "because it was cheaper." (#18-2 ¶¶4, 6.) She does not attest that the website or any Expedia account specifically targeted Massachusetts residents.[16]

Elizabeth does not assert that, while in Massachusetts, she saw billboards for the Resort, heard about the Resort on television or radio, or read about the Resort in a magazine or newspaper. Nor does she say that she received direct mailings promoting the Resort or its spa treatments, excursions, or other amenities at her Westport home. Shimeld attests that defendants "have never directed any specific advertisements in the Massachusetts marketplace." (#8-2 ¶27.)

The record is devoid of evidence that the website or third-party accounts (or, for that matter, the Resort itself) generates a regular flow or course of sales to Massachusetts residents. The record is silent as to the Resort's income, from Massachusetts-based guests or otherwise.[17]

Yet plaintiffs' evidentiary proffer is not limited to the website or third-party accounts. Elizabeth attests that she and Jodie "communicated directly with Marigot regarding the trip via telephone, email and fax on January 20, 22, 23, 24, 25, 2018 and February 19, 2018." (#18-2 ¶8.) Exhibit C includes emails between Elizabeth and the Resort on January 20, 22-25 and an email

---

[16] It is fair to infer that the "divers" who were "targeted" can and do live anywhere.

[17] Shimeld attests that defendants do not derive substantial revenue from services rendered "in" Massachusetts. (#8-2 ¶30.) That stands to reason, as the Resort is "in" St. Lucia, where its hospitality services are rendered. Shimeld also attests that defendants do not have "channels of regular communication" to Massachusetts residents. (#8-2 ¶28.) The court does not understand the absence of such "channels" to foreclose the possibility that the Resort, through its website, third-party accounts, or off-line, generates a regular flow or course of sales to Massachusetts residents. *See Plixer*, 905 F.3d at 10 (record did not show what percentage of defendants' business came from United States but did show that defendant used website to obtain U.S.-based contracts, which yielded nearly $200,000 over three-and-a-half years, "not insubstantial income").

from the Resort to Jodie on February 19. *See* #18-1 at 11-29.[18] The court notes that it would be reasonable to conclude that the Resort at least should have known that Elizabeth and Jodie were Massachusetts-based guests prior to their arrival. The credit card authorization form bears a Massachusetts address. (##18-1 at 24; 18-1 at 21, 23.) Moreover, the court notes that some of the emails refer to discounts for spa treatment apparently promoted on the Resort's website. (#18-1 at 18-19.)

On this record, the court will assume, without deciding, that plaintiffs have satisfied their burden on the purposeful availment prong of the due process inquiry based on the website, third-party accounts, and communications. That assumption is not dispositive.[19] Plaintiffs must still satisfy their burden on the relatedness prong. *See A Corp.*, 912 F.3d at 59-60 (plaintiff did not satisfy burden on relatedness prong). *Cf. Plixer*, 905 F.3d at 7 (defendant conceded relatedness). On the current record, the court is not persuaded that they have.

First, a key component of the *Ford* constitutional relatedness inquiry is absent in this case. There, plaintiffs were in car accidents in Montana and Minnesota and brought suits in Montana and Minnesota. *See Ford*, 141 S.Ct. at 1028 ("Ford had systematically served a market in Montana

---

[18] Defendants refer to plaintiffs' evidentiary proffer of communications only obliquely, arguing that defendants "didn't interact" with plaintiffs "via [the Resort's] website," since Elizabeth has admitted that she exchanged emails and had phone calls with the Resort. (#19 at 4 & n. 1.) Despite the evidentiary proffer, defendants maintain that they had "no contacts with Massachusetts." (#19 at 6.)

[19] Given the SJC's decision in *Tatro*, the court will also assume, without deciding, that plaintiffs have met their burden under Mass. Gen. Laws ch. 223A, § 3(a). Satisfaction of the statutory requirements is necessary, but not sufficient for the court's exercise of personal jurisdiction over defendants. *See Nandjou*, 985 F.3d at 148; *Chen*, 956 F.3d at 54; *A Corp.*, 812 F.3d at 58. *See also Ericson*, 2020 WL 6912105, at *4 n. 3; *Christopher*, 1996 WL 590738, at *1, *2-3, *5-7.

To be clear, in light of its ruling on plaintiffs' request for jurisdictional discovery, *see* Part VI, the court expressly does not decide now whether plaintiffs have met their burden under the Massachusetts long-arm statute or the Due Process Clause.

and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them <u>in those States</u>") (emphasis supplied). In contrast, Elizabeth fell in St. Lucia and has brought suit in Massachusetts.

In light of *Nowak* and *Nandjou*, the fact that Elizabeth sustained injuries at a foreign hotel is not determinative. Yet key components of the *Nowak* and *Nandjou* constitutional relatedness inquiries are absent in this case, as well. In *Nowak*, the hotel and plaintiff's employer had an ongoing business relationship. In *Nandjou*, the hotel directly targeted plaintiff and her family, inducing them to book the vacation through promotional materials, including descriptions of the pool. In this case, there is no comparable allegation or evidence of an ongoing business relationship or the direct targeting of plaintiffs or even Massachusetts residents. While there were communications after the reservation was made, they pertained to additional hospitality services that apparently were not related, directly or indirectly, to Elizabeth's fall and injuries.[20]

Plaintiffs' present showing on the relatedness prong is substantially similar to, if not less compelling than, plaintiffs' showing in *Badia v. Hamanasi Adventure and Dive Resort*, No. 16-CV-10252-LTS, 2017 WL 551817 (D. Mass. Feb. 10, 2017), which was held insufficient. In *Badia*, plaintiffs vacationing at defendant-Belizean resort sustained injuries in an accident purportedly caused by the negligent driving of the resort's employee, who was transporting them to Guatemala. Plaintiffs' evidentiary proffers established the following: a plaintiff's husband

---

[20] Elizabeth does not attest that she was injured during spa treatments, excursions, or any other activity discussed in the emails. The court notes that while the emails pertain to facials in the morning of February 16 (#18-1 at 20), Elizabeth attests that she was injured in the evening of February 16. (#18-2 ¶10.) The court also notes there is no evidence of assurances by the Resort about the entrance to the sauna and jacuzzi where the accident occurred (#18-2 ¶11.) *Contrast Sigros*, 129 F. Supp. 2d at 67 (in holding that plaintiffs satisfied *Nowak*'s modified proximate cause standard, observing that "Disney assured [mother] that handicapped-accessible facilities were available for [daughter] in their hotel room").

accessed the resort's website through an advertisement on tripadvisor's website. The resort's website contained boastful testimonials from Massachusetts residents. It directed the husband to enter his contact information. A representative then emailed the husband and communicated the resort's offerings and pricing. In November 2012, the husband and a representative exchanged a series of emails about the purchase of a travel package. A representative instructed plaintiff and her husband to call the resort's Florida office. During a call, a representative told plaintiff that, as part of an all-inclusive travel package, the resort would provide transportation to and from various destinations in Belize. As a result of this offer and their communications with the resort, plaintiff and her husband agreed to purchase an all-inclusive travel package.[21] In late November, the resort emailed plaintiff the final invoice, which was paid. The car accident occurred in February 2013. *Id*. at *1-2 (citations to record omitted).

Plaintiffs argued that they satisfied their burden on the relatedness prong because the resort advertised in Massachusetts; maintained an interactive website that was accessible to Massachusetts residents; communicated with plaintiff and her husband, representing that it would provide transportation to and from various destinations in Belize; and, as a result, plaintiff and her husband entered into a contract with the resort for the sale of the all-inclusive travel package. *Badia*, 2017 WL 551817, at *4. The court was unpersuaded. While the resort's advertising, website, communications, and contract for sale were a cause in fact of plaintiffs' injuries, they were not a legal cause. None of the Massachusetts connections "gave birth to" plaintiffs' claims; the resort's alleged negligent entrustment and the employee's alleged negligent driving -- both of

---

[21] Based on the resort's sworn assertions, the trip to Guatemala was not part of the all-inclusive travel package. It would have been purchased on-site in Belize. *Badia*, 2017 WL 551817, at *2, *4 n. 8.

which occurred in Belize -- "gave birth" to them. *Id*. (citation omitted). Even applying a "relaxed" standard, the court was unable to conclude that litigation about the February 2013 accident directly arose out of the resort's advertising, website, and forum-based activities in November 2012. *Id*. (citations omitted).[22]

The court recognizes that *Badia* was decided before *Nandjou* (and *Ford*) and that the First Circuit cautioned in *Nandjou* that the facts of *Nowak* (and, by extension, of *Nandjou*) "do not necessarily define the outer limits of the circumstances in which a defendant's actions in the forum jurisdiction to cultivate a plaintiff's business may be said to be related to a resulting tort claim though those actions did not proximately cause the tort." *Nandjou*, 985 F.3d at 150. Nevertheless, the decision is informative, and it counsels against any conclusion that, on the current record, plaintiffs have satisfied their burden on the relatedness prong of the due process inquiry.[23]

---

[22] While the court's order in *Badia* does not explicitly address *Nowak*'s modified proximate cause standard, defendants anticipated that plaintiffs would invoke the loosened approach. *See* Defendant Hamanasi Adventure and Dive Resort's Memorandum in Support of Its Motion to Dismiss for Ineffective Service, Lack of Personal Jurisdiction, and Forum Non Conveniens, No. 16-CV-10252-LTS, ECF No. 14 (13-1) at 10-11. Plaintiffs did so. *See* Plaintiffs' Opposition to the Defendant, Hamanasi Adventure and Dive Resort's Motion to Dismiss for Ineffective Service, Lack of Personal Jurisdiction and Forum Non Conveniens, No. 16-CV-10252-LTS, ECF No. 20 at 11.

[23] Plaintiffs cite a string of cases for the proposition that "[c]ourts have repeatedly found the relatedness prong 'easily satisfied' where the alleged claim arose out of the publication of a website in Massachusetts that allegedly caused harm to a Massachusetts plaintiff." *See* #18 at 14 (*quoting Edvisors Network, Inc. v. Educational Advisors, Inc*., 755 F. Supp. 2d 272, 281 (D. Mass. 2010); *citing Gather, Inc. v. Gatheroo, LLC*, 443 F. Supp. 3d 108, 115 (D. Mass. 2006); *N. Light Tech. v. N. Lights Club*, 97 F. Supp. 2d 96, 106 (D. Mass. 2000)). *See also* #18 at 11 (discussing *Pet Edge, Inc. v. Fortress Secure Solutions, LLC*, 144 F. Supp. 3d 249 (D. Mass. 2015), and relatedness inquiry); 18 at 13-14 (discussing *Hasbro, Inc. v. Clue Computing, Inc*., 994 F. Supp. 34 (D. Mass. 1997) and *Morphotrust USA, LLC v. Identrix, LLC*, No. 16-CV-10074-DJC, 2016 WL 3512131 (D. Mass. June 21, 2016), and relatedness inquiry). These are trademark and patent infringement cases in which defendants' internet-based conduct was, in whole or in part, the tortious conduct causing the tortious injury. *See Morphotrust*, 2016 WL 3512131, at *3-5 (trademark infringement; "the crux of [plaintiff's] allegations is that Defendants' websites infringed a Massachusetts corporation's trademark"); *Edvisors*, 755 F. Supp. 2d at 276, 281 (trademark infringement involved use of "edadvisors.com"); *Gather*, 443 F. Supp. 2d at 111-112, 115 (trademark

VI. <u>Plaintiffs' Request for Jurisdictional Discovery</u>.

Plaintiffs argue that they are entitled to jurisdictional discovery prior to dismissal. They assert that the full extent of defendants' contacts with Massachusetts and communications with its residents is unknown and evidence of such contacts and communications is within defendants' control. (#18 at 7, 17-18.)[24] Diligent plaintiffs who sue foreign defendants and make a colorable claim for personal jurisdiction "*may* well be entitled to" jurisdictional discovery. *U.S. v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 625 (1st Cir. 2001) (citation omitted) (emphasis in original). That entitlement is not absolute. *Id.* (citation omitted). Even if plaintiffs are diligent and make a colorable claim, the court has broad discretion in determining whether jurisdictional discovery is necessary. *Id.* at 625-626 (citation omitted).

Plaintiffs' obligation to be diligent includes the obligation to present facts which show why personal jurisdiction would be found if discovery were permitted. *Swiss Am. Bank*, 274 F.3d at 626 (citation omitted). Judges in this district have denied requests for jurisdictional discovery where plaintiffs fail to present such facts. *See Ericson*, 2020 WL 6912105, at *8-9 (and cases cited). Here, plaintiffs hardly explain what they hope or expect to find.

---

infringement involved use of "gatheroo.com");  *N. Light Tech.*, 97 F. Supp. 2d at 98, 102, 106 (trademark infringement involved use of "northernlights.com"); *Hasbro*, 994 F. Supp. at 36, 44 (trademark infringement involved use of "clue.com"). *See also Pet Edge*, 144 F. Supp. 3d at 252, 258 (patent infringement involved purchase through Amazon.com and shipment of allegedly infringing product to Massachusetts residents). Here, defendants' internet-based conduct was not the tortious conduct causing the tortious injury. *Compare Badia*, 2017 WL 551817, at *4 n. 9 (rejecting plaintiffs' reliance on *Hasbro*; resort's website was merely very attenuated but-for cause of on-site car accident and injuries). Plaintiffs' reliance on these and like cases on the relatedness prong is misplaced.

[24] In reply, defendants argue that plaintiffs have not made the requisite prima facie showing and urge the court to dismiss the complaint. (#19 at 10: "…they can file a new Complaint in St. Lucia.") They do not squarely address plaintiffs' request for jurisdictional discovery.

Yet the court is mindful of the stakes of this case, as well as the competing interests of the parties. Defendants argue that "[i]t will be very burdensome for [them] to appear and attend proceedings in Massachusetts, which is far from their St. Lucia location." (#8 at 16.) Plaintiffs could presumably say the same of attempting to seek redress in St. Lucia.

Under the circumstances presented here, the court will afford plaintiffs the opportunity to conduct jurisdictional discovery. *Compare Fiske v. Sandvik v. Mining*, 540 F. Supp. 2d 250, 258 (D. Mass. 2008) (although current record insufficient, exercising broad discretion to permit jurisdictional discovery). Plaintiffs have 90 days from the issuance of this Memorandum and Order in which to conduct jurisdictional discovery. Defendants may file a renewed motion to dismiss for lack of personal jurisdiction and improper venue within 21 days of the expiration of that 90-day period.

## VII. Conclusion.

For the foregoing reasons, defendants' motion to dismiss (#7) is denied without prejudice, subject to its renewal after the completion of jurisdictional discovery.

June 3, 2021                                              /s/ M. Page Kelley
                                                         M. Page Kelley
                                                         Chief United States Magistrate Judge